IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

FARMERS NEW WORLD LIFE
INSURANCE COMPANY,

              Plaintiff,

      v.

ADVANCED SURGICAL CARE, LLC;
ADVANCED SURGICAL CARE GI
DIAGNOSTICS, LLC; ESTATE OF
MARINUS KONING, BY AND THROUGH
ITS AFFIANT PATRICIA O. O'NEILL,

              Defendants.

_____

ESTATE OF MARINUS KONING,
BY AND THROUGH
ITS AFFIANT PATRICIA O. O'NEILL,

              Cross-Complainant,

      v.

ADVANCED SURGICAL CARE, LLC;
ADVANCED SURGICAL CARE GI
DIAGNOSTICS, LLC,

              Cross-Defendants.

_____

**OPINION & ORDER**

Civ. No. 6:25-cv-00485-AA

AIKEN, District Judge.

       Before the Court, in this diversity interpleader action, is Advanced Surgical

Care, LLC's and Advanced Surgical Care GI Diagnostics, LLC's (collectively

"Defendants") Motion to Dismiss, ECF No. 21, the Cross Claim of the Estate of

Page 1 – OPINION AND ORDER

Marinus Koning, by and through its Affiant Patricia O. O'Neill ("Cross Complainant"). *See* Cross Compl., ECF No. 19. For the reasons explained below, Defendants' Motion to Dismiss, ECF No. 21, is GRANTED with leave to amend. Cross Complainant's Motion to Strike, ECF No. 24, is DENIED as MOOT.

## BACKGROUND

Marinus Koning ("Decedent") died on January 7, 2023. Farmer's New World Life Ins. Co. ("FNWL") Compl. ¶ 18, ECF No. 1. At issue is who gets the proceeds from Decedent's two keyman life insurance policies—the named beneficiaries (the bankrupt LLCs) or Cross Complainant, Decedent's widow Patricia O. O'Neill. The amount at issue is $1,003,526.20, which the insurer FNWL deposited with the Clerk of Court. *See* ECF No. 17. FNWL was discharged from this interpleader action and awarded $7,315.00 in attorney fees, paid from the policy proceeds. *See* ECF No. 34. The only question that remains is who is entitled to the balance of those proceeds.

In 2002, Dr. Stephen B. Archer, Dr. Rodney Buzzas, and Decedent Dr. Marinus Koning filed documents with the Oregon Secretary to incorporate Defendant Advanced Surgical Care, LLC, ("ASC") and Defendant ASC GI Diagnostic Center, LLC ("ASC GI"). Def. Mot. at 3. "The diagnostic center [ASC GI] operated in two rooms inside of ASC." *Id.* The three physicians "were the members/owners of both entities until [D]ecedent's retirement, six years after formation of the entities." *Id.*

In 2003, each of the three physician-members applied for and were issued keyman life insurance policies "with the beneficiary listed as ASC on one policy, and

ASC GI on the second policy for each." Def. Mot. at 3; FNWL Compl. ¶¶ 7–15. Decedent was issued Policy 007123838 and Policy 007123839 (the "Policies").

Policy 007123838 ("Policy 3838") was issued with a face amount of $450,000. FNWL Compl. ¶ 9. The designated owner of Policy 3838 was ASC, and the designated (and sole) beneficiary on the policy was ASC. FNWL Compl. ¶¶ 8–10; *see also* Ex A, (Policy 3838 application), ECF No. 1-1. On the policy application, decedent did not designate a contingent beneficiary. *Id.* ¶ 8; *see* Ex. A.

Policy 007123839 ("Policy 3839") was issued with a face amount of $500,000. *Id.* ¶ 13. The designated owner of Policy 3839 was ASC GI, and the designated (and sole) beneficiary on the policy was ASC GI. *Id.* ¶¶ 12, 14; *see also* Ex. B, (Policy 3839 application), ECF No. 1-2. On the policy application, decedent did not designate a contingent beneficiary. *Id.* ¶ 12; *see* Ex. B.

Decedent retired from practice in 2008. Def. Mot. at 3. In 2009, Decedent re-assigned ownership of Policy 3838 from ASC to himself, and he re-assigned ownership of Policy 3839 from ASC GI to himself. FNWL Compl. ¶¶ 16, 17; Ex. C, (Absolute Assignment Forms), ECF No. 1-3. Even though Decedent changed ownership of the Policies, he did not change the beneficiaries on the Policies. *See* FNWL Compl. ¶ 20. ("FNWL did not receive any request to change the beneficiaries of the Policies prior to the Decedent's death[.]").

## LEGAL STANDARD

A motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

When evaluating the sufficiency of a complaint's allegations, a court must accept a plaintiff's allegations of fact as true and construe them in the light most favorable to the plaintiff. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). But a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation" of the action's elements. *Id.* (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

To survive a motion to dismiss, a pleading must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## DISCUSSION

Cross Complainant, Decedent's widow, purports to represent the Estate as a simple estate affiant under Oregon's Simple Estate Law, ORS 114.505 to 114.560, which provides "a statutory scheme that provides a process for the administration of

small estates in the alternative to full probate." Resp. at 3, ECF No. 25. Cross Complainant filed a claim to the Policies' death benefit even though she is not listed as beneficiary on either policy. Cross Complainant brings four claims: (1) A declaratory judgment that Policy 3839 lacks a valid beneficiary, Cross Compl. ¶¶ 19–29; (2) Reformation of the Policies to properly identify the beneficiary or beneficiaries, *id.* ¶¶ 30–40; (3) Imposition of a constructive trust, *id.* ¶¶ 41–46; and (4) a finding that ASC and ASC GI "waived any right to remain as beneficiaries of the Policies[,]" *id.* ¶¶ 47–51. Cross Complainant also moves to strike the Declaration of Dr. Buzzas. *See* ECF No. 24.

Defendants move to dismiss the Cross Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of standing, under 12(b)(2) for lack of personal jurisdiction, and under Rule 12(b)(6) for failure to state a claim.

I.    *The Simple Estate is Invalid*

Defendants contend that Cross Complainant lacks standing and that the Court lacks personal jurisdiction over the Estate because the simple estate is invalid. Def. Mot. at 5; Reply at 3, ECF No. 26. Defendants contend that the Estate does not meet the simple estate value limitations as provided by ORS 114.510(1)(b):

> (1) A person who meets the requirements of ORS 114.515 may file a simple estate affidavit only with regard to an estate in which . . .
>
> (b) The decedent died testate and:
>
>> (A) Not more than $75,000 of the fair market value of the estate is attributable to personal property . . . ;
>>
>> (B) Not more than $200,000 of the fair market value of the estate is attributable to real property . . . ;

> (C) The balance of the fair market value of the estate is
> attributable to property that is devised to the trustee of a trust
> of which the decedent was a settlor, as defined in ORS 130.010,
> and which came into existence prior to the decedent's date of
> death.

ORS 114.510(1)(b)(A)–(C) (Value limitations for simple estate).

Cross Complainant maintains that the Estate qualifies as a simple estate under ORS 114.510(1)(b) because Decedent died testate and because the Estate's value does not exceed the personal property fair market value cap as set out in ORS 114.510(1)(b)(A) because the Policies' proceeds fall under Subsection (C).  Resp. at 4–6.

Cross Complainant maintains that because the Policies "did not list a proper beneficiary," the Policies' proceeds are included in the Estate and pass under the residue clause of Decedent's Will, which the Will designated to the Trustee of the Trust.  *Id.* at 4.  Cross Complainant maintains that the proceeds thus constitute "the balance of the fair market value of the Estate" and is "attributable to property devised to the Trustee of the Trust," per Subsection C).  *Id.* at 6.

But Subsection (C) exempts from the simple estate value cap the "balance of the fair market value of the estate . . . that is devised to the trustee of a trust . . . *which came into existence prior to the decedent's date of death.*"  ORS 114.510(1)(b)(C) (emphasis added).  Life insurance proceeds do not become due and payable until the insured dies, so they do not come into existence prior to a decedent's date of death— they come into existence after a decedent's date of death.  Therefore, Subsection (C) does not apply to the Policies' proceeds.  The value of those proceeds here is

Page 6 – OPINION AND ORDER

approximately $1,000,000, which exceeds the $75,000 maximum personal property value permitted for a simple estate in Oregon. *See* ORS 114.510(1)(b)(A).

In sum, because the Estate does not meet the simple estate criteria, the simple estate is invalid. For this reason, the Cross Complainant—who filed this action on behalf of the estate as simple estate affiant—lacks standing, and the Court lacks personal jurisdiction over the Estate. To remedy this problem, Cross Complainant requests time "to file a formal probate [in state court] so that a personal representative may be appointed" to represent the Estate in this action. Resp. at 6. Accordingly, the Court grants Cross Complainant time to seek leave of the state court to commence formal probate proceedings there. But there are other flaws with the Cross Complaint.

## II. *Policy 3839 Contains a Scrivener's Error*

Cross Complainant seeks a declaratory judgment that Policy 3839 lacks a valid beneficiary, and she seeks to reform the policy to properly identify Policy 3839's beneficiary as Decedent. Cross Compl. ¶¶ 19–29, 30–40.

In 2003, shortly after the three physician-members formed the LLCs, ASC and ASC GI, they each applied for two keyman policies—one to protect each LLC in the event of the insured's death. Like the other physician-members of the group, Decedent applied for and was issued policy 3838 to protect ASC, which was the designated owner and only beneficiary on that policy. Decedent also applied for and was issued policy 3839 to protect ASC GI, which was the designated owner and only beneficiary on that policy.

Cross Complainant contends that Policy 3839 lacks a valid beneficiary because Decedent listed the beneficiary on the that application as "Advanced Surgical Care GI Diagnostics, LLC"—an entity that Cross Complainant alleges "does not exist and . . . has never existed as a registered entity in Oregon." Cross Compl. ¶ 8. The entity name, "Advanced Surgical Care GI Diagnostics, LLC[,]" does not match the name of the actual registered entity, "ASC GI Diagnostic Center, LLC." *See* Barton Decl. ¶ 5, Ex. 2, (Copy of Oregon Secretary of State printout of business name), ECF No. 22-2.

Cross Complainant maintains that because Policy 3839 lacks a proper beneficiary and because Policy 3839 designates Decedent as the policy *owner*, that Decedent—not ASC GI—is also the policy's *beneficiary*. *Id.* ¶¶ 26–29.

The interpretation of an insurance policy is an issue of law. *Hoffman Constr. Co. v. Fred S. James & Co.*, 313 Or. 464, 469 (1992). The overriding goal in construing an insurance policy is to "ascertain the intention of the parties." *Dewsnup v. Farmers Ins. Co.*, 349 Or. 33, 39–40 (2010) (internal quotation marks omitted). Oregon courts "interpret the terms of an insurance policy according to what [they] perceive to be the understanding of the ordinary purchaser of insurance." *Hunters Ridge Condo. Ass'n v. Sherwood Crossing, LLC*, 285 Or. App. 416, 422 (2017) (quoting *Congdon v. Berg*, 256 Or. App. 73, 87 (2013) and citing ORS 42.250 ("The terms of a writing are presumed to have been used in their primary and general acceptation[.]")).

Here, Decedent applied for both keyman policies at the same time—shortly after the LLCs had been formed.  The entities were connected to each other—ASC and ASC GI were part of the same practice.  Decedent was a physician-member of both entities and thus had an interest in ensuring the financial viability of both entities.  The other physician-members also applied for two keyman policies—one to protect each entity.  The name used by Decedent in applying for the 3839 policy ("Advanced Surgical Care GI Diagnostics, LLC") is very similar to the name on file with the Oregon Secretary of State ("ASC GI Diagnostic Center, LLC") and the difference in the names is technical and not obvious.  For these reasons, the Court concludes that, at the time that Decedent applied for Policy 3839, he intended for ASC GI Diagnostic Center, LLC to be both the owner and beneficiary of that policy.

III.   *Decedent failed to Substantially Comply with Insurance Procedure*

Even though Decedent is not listed as a beneficiary on either of the Policies, Cross Complainant contends that "once Decedent assumed complete control over the Policies, his intent was to designate new beneficiaries to the Policies and leave all of his assets to his Trust."  Resp. at 8; Cross Compl. ¶¶ 12, 13.

In construing an insurance contract, a court seeks to determine the parties' intent.  *Andres v. Am. Standard Ins. Co. of Wisconsin*, 205 Or. App. 419, 423–24 (2006) (citing *Hoffman Constr. Co.*, 313 Or. at 469).  To determine the parties' intent, "[t]he first step is to examine the text of the policy to determine whether it is ambiguous, that is, whether it is susceptible to more than one plausible

interpretation." *Id.* "If it is not, the policy is interpreted in accordance with that unambiguous meaning." *Id.*

Here, the Policies are not ambiguous as to the designated beneficiaries, ASC and ASC GI respectively. As explained above, any ambiguity attributable to the misnaming of ASC GI as the designated beneficiary on Policy 3839 is attributable to a scrivener's error, which the Court has resolved. Cross Complainant does not contend that the beneficiary language is ambiguous, but that Decedent intended to change the Policies' beneficiaries even though Decedent failed to comply with FNWL's procedure to change the beneficiaries. Cross Compl. ¶¶ 13, 14.

"The procedural formalities that [the decedent] failed to comply with were established primarily so the insurer would not be exposed to liability for paying the wrong person." *Principal Life Ins. Co. v. Downing-Sterling*, No. CV 01-1809 HU, 2003 WL 25279366, at *3 (D. Or. Feb. 5, 2003). "When the insurer has filed an interpleader, tendered the policy proceeds to the court, and disclaimed any interest in the outcome, Oregon precedent holds that the insurer has waived strict compliance with the procedural formalities for a change of beneficiary." *Id.* (citing *N. Life Ins. Co. v. Burkholder*, 131 Or. 537, 550–51 (1930); *Metro. Life Ins. Co. v. Skov*, 51 F. Supp. 470, 477 (D. Or. 1943); *Couch on Insurance* 3d § 60:61, n.44). "So long as the decedent's intentions are clear and the insurer is not placed at risk, there is little reason to insist on rigid adherence to formalities created primarily to protect the insurer." *Id.* at *4 (citing *Burkholder*, 131 Or. at 552–54).

Further, "Oregon has rejected the notion that a change of beneficiary can be made only by strictly complying with the procedure established by the insurance company." *Id.* (citing *Burkholder*, 131 Or. at 552). But "there must be at least some attempt made on the part of the insured to change a beneficiary before equitable relief will be applied." *Id.* at *5 (quoting *Edwards v. Wolf*, 278 Or. 255, 262 (1977)).

Oregon courts have addressed the issue of what "attempt" on the part of the insured to change a beneficiary suffices to provide equitable relief. In the seminal case, *N. Life Ins. Co. v. Burkholder*, 131 Or. 537, 538 (1930), the insured took out a life insurance policy for which he designated his estate as beneficiary. At some later time, he wrote his fiancée's name on the beneficiary line of the policy. *Id.* After the insured died, the Oregon Supreme Court granted equitable relief to the decedent's fiancée, who it determined was the proper beneficiary. The Court explained that although the decedent had not followed the insurance company's change-of-beneficiary procedure, there was "a clear and unmistakable designation, under the hand of the decedent, that he wished [his fiancée] to receive the proceeds of his insurance policy[.]" *Id.* at 552.

In *Edwards v. Wolf*, 278 Or. 255, 257 (1977), the insured took out a life insurance policy and named his father as beneficiary but later filed an amendment to the policy substituting his wife as beneficiary. The copy of the policy that the decedent retained, however, continued to show his father as beneficiary. *Id.* The decedent later divorced and remarried and discussed with his new wife that he sought to maintain his father as the policy's beneficiary, to which she "was

agreeable[.]" *Id.* at 258.  After the decedent died, his father and new wife sued his former wife to recover the policy proceeds. To determine whether to afford equitable relief to the decedent's father, the Oregon Supreme Court examined *Burkholder*.  *Id.* at 261.  The Court concluded that, like the *Burkholder* decedent, the *Wolf* decedent, had failed to make "any effort to comply with the terms of the insurance policies in changing beneficiaries" before his death.  *Id.* at 262.  The Court clarified that "there must be at least some attempt made on the part of the insured to change a beneficiary before equitable relief will be applied."  *Id.*

Even though the *Wolf* decedent had failed to make any effort to change the policy's beneficiary, the Court afforded equitable relief to his father "[f]or one reason, and one reason only . . . that the defendant [had] entered into a written stipulation agreeing that it was the decedent's intent at the time of his death that [his father] receive the proceeds of the insurance policy."  *Id.* at 262.

Here, FNWL required that the insured file a notice with FNWL to change a beneficiary.  But Decedent failed to do so.  Yet, Decedent submitted a change-of-ownership notice to FNWL.  And he filed that change-of-ownership notice in 2009— fourteen years before he died.  But at no time did he change the Policies' beneficiaries.  If Decedent had intended to change the Policies' beneficiary, he had fourteen years to do so or to show that he intended to do so.  In Oregon, a court can provide equitable relief only if the insured makes "at least some attempt" to change a beneficiary.  *Wolf*, 278 Or. at 262.

Cross Complainant offers no evidence that Decedent attempted to submit a change-of-beneficiary notice to FNWL. But Cross Complainant offers other evidence to show that Decedent intended to change the Policies' beneficiaries:

> a. The Decedent completely severed his business relationship with the Corporate Defendants in 2009;
>
> b. The Decedent took ownership of the Policies through formal Absolute Assignment Forms, at that time;
>
> c. The Corporate Defendants administratively dissolved in 2013 (ASC) and 2016 (ASC GI);
>
> d. The Decedent established a revocable trust for estate planning purposes, as evidenced by the Estate Affidavit filed by Patricia O. O'Neill;
>
> e. The Decedent executed a pour-over Will that would have channeled all of his assets to his trust, including life insurance policies; and
>
> f. There was no legitimate business purpose for the Corporate Defendants to remain as beneficiaries after the Decedent's separation from these entities.

Resp. at 9–10; Cross Compl. ¶¶ 13–14.

The parties do not dispute that Decedent retired from his practice in 2008, that Decedent changed the Policies' ownership in 2009, and that the entities ASC and ASC GI were later dissolved. *See* Def. Mot. at 3–4. However, these facts do not show that Decedent made "at least some attempt" to change the Policies' beneficiaries. And even assuming that "[t]here was no legitimate business purpose for the Corporate Defendants to remain as beneficiaries[,]" this fact also does not show that Decedent made "at least some attempt" to change the Policies' beneficiaries.

Page 13 – OPINION AND ORDER

Finally, Cross Complainant points to Decedent's Will and to his Trust. Resp. at 9–10; Cross Compl. ¶¶ 13–14. Decedent's Will does not help Cross Complainant because the Will does not refer to any life insurance policy. *See* Barton Decl., Ex. 3 (Decedent's Last Will and Testament), ECF No. 22-3. And the Trust Agreement provides, in relevant part:

> 1.3 Trust Property. Life insurance policies or other contracts providing death benefits listed on Schedule B may designate my Trustee as beneficiary. . . .

> 9.8 Life Insurance Proceeds. My Trustee shall collect the proceeds of any life Insurance policy for which my Trustee is the beneficiary and shall hold those proceeds under the terms of this Agreement.

Barton Decl., Ex. 1 (Complete Restatement of Decedent's Trust), ECF No. 22-1. The Trust Agreement also does not help Cross Complainant because the applicable provisions contain boilerplate language that apply to any life insurance policy for which the Trustee is named beneficiary, and Schedule B does not list either of the Policies. Schedule B lists four other life insurance policies but does not name the Policies either by number or by insurance company or even as "keyman" policies. *Id.*, Schedule B, ECF 22-1 at 37. Further, the Trust was amended in 2022, long after Decedent had changed the Policies' ownership.

Cross Complainant cites *Sackos v. Great-W. Life Assur. Co.*, 213 Or. App. 298, 307 (2007) for the proposition that, "[i]n Oregon, a court will change the beneficiary of a life insurance policy when 'the decedent intended to accomplish such a change.'" Resp. at 7. But, unlike the case here, in *Sackos*, there was evidence that the decedent had made at least some attempt to change the beneficiary on his life insurance policy—the decedent had submitted "two different forms indicating that he intended

to change the beneficiary[,]" but the insurance company had not recorded the change. *Sackos*, 213 Or. App. at 307.

Cross Complainant also cites *Webber v. Olsen*, 157 Or. App. 585, 592 (1999), *rev'd on other grounds*, 330 Or. 189 (2000), for the proposition that Oregon courts in equity have a "lenient" view of "the evidence necessary to show a decedent's intention[,]" which "'depends, apparently, on the facts of each case.'" Resp. at 7 (quoting *Webber*, 157 Or. App. at 592). In *Webber*, the court analyzed a potential conflict of law between Oregon and California, concluding that "[t]he 'every reasonable effort' rule announced in the California cases is considerably different from the 'at least some attempt' . . . standard[] enunciated in *Wolf*." *Webber*, 157 Or. App. at 592. That Oregon has a more lenient standard for providing equitable relief in these cases does not mean that Oregon has no standard. That standard is not met here.

In sum, accepting Cross Complainant's facts as true and viewing them in the light most favorable to Cross Complainant, the Court concludes that none of Cross Complainant's evidence constitutes "at least some attempt *made on the part of the insured*" to change the Polices' beneficiaries. *Wolf*, 278 Or. at 262 (emphasis added). That is, Cross Complainant offers no evidence that Decedent himself took any action to change the Policies' beneficiaries. Cross Complainant thus fails to state a claim that she is entitled to the insurance proceeds.

IV.    *Leave to Amend*

Generally, Federal Rule of Civil Procedure 15 "advises the court that leave shall be freely given when justice so requires." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks and citation omitted). "This policy is to be applied with extreme liberality." *Id.*

But "[d]ismissal without leave to amend is proper only if it is clear . . . that the complaint could not be saved by any amendment." *McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1090 (9th Cir.2003) (internal quotation marks and citations omitted). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Sweaney v. Ada Cty., Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997) (alteration in original) (citation omitted). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001).

Although Cross Complainant likely cannot provide additional allegations to support her claim, the Court grants leave to amend the Cross Complaint. The Court also grants Cross Complainant time to seek leave of the state court to commence formal probate proceedings there so that this action can be brought by the estate's personal representative, the real party in interest. *See* Fed. R. Civ. P. 17(a) ("An action must be prosecuted in the name of the real party in interest.").

**CONCLUSION**

For the reasons explained above, the Court GRANTS Defendants' Motion to Dismiss, ECF No. 21, and dismisses the Cross Complaint, ECF No. 19, with leave to amend. Cross Complainant shall have 30 days from the date of this Order to amend her Complaint. The Court also grants Cross Complainant time to seek leave of the state court to commence formal probate proceedings there so that a personal representative may be appointed to represent the Estate in this action. Cross Complainant's Motion to Strike, ECF No. 24, is DENIED as MOOT.

It is so ORDERED and DATED this __26th__ day of February 2026.

 /s/Ann Aiken
ANN AIKEN
United States District Judge