**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**EUGENE DIVISION**

FARMERS NEW WORLD LIFE INSURANCE COMPANY,

Plaintiff,

v.

ADVANCED SURGICAL CARE, LLC; ADVANCED SURGICAL CARE GI DIAGNOSTICS, LLC; ESTATE OF MARINUS KONING, BY AND THROUGH ITS AFFIANT PATRICIA O. O'NEILL,

Defendants.

---

ESTATE OF MARINUS KONING, BY AND THROUGH ITS AFFIANT PATRICIA O. O'NEILL,

Cross-Complainant,

v.

ADVANCED SURGICAL CARE, LLC; ADVANCED SURGICAL CARE GI DIAGNOSTICS, LLC,

Cross-Defendants.

---

**OPINION & ORDER**

Civ. No. 6:25-cv-00485-AA

AIKEN, District Judge.

Before the Court in this diversity interpleader action under 28 U.S.C. §§ 1332, 1335 is Advanced Surgical Care, LLC's and Advanced Surgical Care GI Diagnostics, LLC's (collectively "Defendants") Motion to Dismiss the Amended Cross-Complaint

of the Estate of Marinus Koning through its personal representative, Patricia O'Neil (the "Estate"). ECF No. 39. Defendants also move for Rule 11 Sanctions. ECF No. 46. For the following reasons, Defendants' Motion to Dismiss, ECF No. 39, is GRANTED. Defendants' Motion for Rule 11 Sanctions, ECF No. 46, is DENIED. Defendants' Motion for award of attorneys' fees, ECF No. 42, is DENIED.

## BACKGROUND

The facts are well known to the parties and the Court from the Court's prior Opinion and Order, in which the Court dismissed the Cross-Complaint with leave to amend. Opinion, ECF No. 37. The Estate returns with an Amended Cross-Complaint. First Am. Cross Compl. ("FACC"), ECF No. 38.

Dr. Marinus Koning ("Decedent") died on January 7, 2023. Farmer's New World Life Ins. Co. ("FNWL") Compl. ¶ 18, ECF No. 1. At issue are the proceeds from two key person life insurance policies. The proceeds have been claimed by Cross Complainant, Decedent's widow Patricia O. O'Neill (the Estate's personal representative) and by Cross Defendants, two LLCs that are the named beneficiaries.

In 2002, Decedent, Dr. Archer and Dr. Buzzas filed documents with the Oregon Secretary of State to form Advanced Surgical Care, LLC, ("ASC") and ASC GI Diagnostic Center, LLC ("ASC GI"). Def. Mot. at 3; First Buzzas Decl. ¶¶ 2, 3, ECF No. 23. "ASC was the practice, and it operated ASC GI[.]" First Buzzas Decl. ¶ 2. The three doctors "were equal partners in each entity at the time of formation, each owning one third of the businesses." *Id.* In 2003, the three physician members

each purchased two key person life insurance policies (the "Policies") from Farmers New World Life Insurance Company ("FNWL"), the entity that commenced this interpleader action.[1] First Buzzas Decl. ¶ 4; *see* FNWL Compl. The three physicians each designated ASC as the sole beneficiary for Policy 007123838 ("Policy 3838") and ASC GI as the sole beneficiary of Policy 007123839 ("Policy 3839"). FNWL Compl. ¶¶ 7–15; Ex. A (Policy 3838 application), ECF No. 1-1; Ex. B (Policy 3839 application), ECF No. 1-2. In March or April 2008, Decedent retired and withdrew from ASC. Def. Mot. at 4; First Buzzas Decl. ¶ 5. In February 2009, Decedent re-assigned ownership of Policy 3838 from ASC to himself, and he re-assigned ownership of Policy 3839 from ASC GI to himself by filing an Absolute Assignment Form for each policy with FNWL. FNWL Compl. ¶¶ 16, 17; Ex. C, (Absolute Assignment Forms), ECF No. 1-3. However, Decedent did not notify FNWL as to any change in the Policies' beneficiaries. *Id.* ¶ 20. ("FNWL did not receive any request to change the beneficiaries of the Policies prior to the Decedent's death[.]"). Decedent paid the premium on the Policies each year for fourteen years until he died in 2023.[2] FACC ¶¶ 20–24; Estate Resp. at 9, ECF No. 43. The Estate alleges that Decedent purchased the Policies from Defendants per a 2008 Independent Contractor Agreement, but that Agreement, incorporated by reference, does not

---

[1] FNWL was discharged from this action after depositing the Policies' proceeds, $1,003,526.20, with the Clerk of Court, from which $7,315.00 was deducted and awarded to FNWL for attorneys' fees. *See* ECF Nos. 17, 36.

[2] The Estate alleges that a total of $229,203 in premiums were paid on the Policies. FACC ¶¶ 22–23. The Estate alleges that Decedent and Patricia O'Neill paid $169,119, or about 74% of the total. *Id.* Defendants paid $60,084, or 26% of the total. *Id.*

support the Estate's allegation.[3] *See* FACC ¶¶ 2, 15–16, 38; Pl. Resp. at 6, ECF No. 43; Def. Mot. at 4–5; Second Barton Decl. ¶¶ 5–6, Ex. 2 (unsigned undated Independent Contractor Agreement), ECF No. 40 at 35.

Defendants move to dismiss the Estate's FACC under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## LEGAL STANDARD

A motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's allegations, a court must accept a plaintiff's allegations of fact as true and construe them in the light most favorable to the plaintiff. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

---

[3] Decedent withdrew from ASC in 2008. The Estate alleges that "Decedent negotiated a contractual right to purchase the Policies from [Defendants]" per a 2008 Independent Contractor Agreement. FACC ¶ 2. The Estate alleges that Decedent then "exercised" that right in 2009. FACC ¶ 38; Pl. Resp. at 6. Defendants seek to incorporate by reference the relevant agreements, which they received from the Estate's counsel: (1) 2002 Operating Agreement; and (2) 2008 Redemption Agreement and Independent Contractor Agreement. Second Barton Decl. ¶ 5, Ex. 1, (2002 Operating Agreement, relevant clause § 8.10(C)), ECF No. 40 at 18; *id.* ¶ 6, Ex. 2, (Independent Contractor Agreement, relevant clause § 4.4), ECF No. 40 at 32. The Independent Contractor Agreement is unsigned and undated and is thus invalid. Ex. 2, ECF No. 40 at 35. The controlling agreement is the 2002 Operating Agreement. That Agreement provides that "[i]n the event a member withdraws from the Company, such member shall have the right to purchase from the Company any insurance policies covering his life or earning capacity at a price equal to the cash surrender value of the policies on the date of withdrawal. This right shall be exercised by payment of the price to the Company *within 60 days after withdrawal*." § 8.10(C) Operating Agreement (emphasis added). The documents show that Decedent could have purchased the policies only within 60 days of his March/April 2008 withdrawal from ASC. He could not have purchased them in 2009.

But a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation" of the action's elements. *Id.* (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

To survive a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Generally, when assessing the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6), a court may not consider material outside the pleadings. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). "When 'matters outside the pleading are presented to and not excluded by the court,' the 12(b)(6) motion converts into a motion for summary judgment under Rule 56." *Id.* (quoting Fed. R. Civ. P. 12(d)). "Then, both parties must have the opportunity to present all the material that is pertinent to the motion." *Id.* (internal citation and

quotation marks omitted). However, the incorporation-by-reference doctrine is an exception to this rule. *Id.* A document may be incorporated by reference into a complaint where a "plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "The [incorporation by reference] doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002. A court need not accept as true "allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## DISCUSSION

Even though the Estate is not listed as the beneficiary on either of the FNWL Life Insurance Policies, the Estate advances four theories for equitable relief: (1) equitable reformation based on substantial compliance; (2) imposition of a constructive trust; (3) equitable restitution; and (4) equitable estoppel. FACC ¶ 4. Defendants move to dismiss the FACC on the grounds that (1) the policies were "corporate assets" of ASC and ASC GI and neither entity authorized either a reassignment of ownership or a change of beneficiary, Def. Mot. at 10–11; (2) Decedent failed to substantially comply with FNWL's change of beneficiary procedure, *id.* at 10–11, 14–15; and (3) there are no other grounds for equitable relief, *id.* at 13, 15–17.

I. *Lack of Authority*

Defendants contend that Decedent lacked authority to re-assign ownership of the Policies from ASC to himself because ASC did not consent to the re-assignment. Def. Mot. at 10–11. Defendants also contend that, for the same reason, Decedent lacked authority to change the Policies' beneficiaries. *Id.* Defendants rely on *Gas-Ice Corp. v. Newbern*, 263 Or. 227, 237 (1972) for the proposition that key person policies are corporate assets that require corporate authorization to change ownership or beneficiary. Def. Mot. at 10. Though the Court finds *Gas-Ice Corp.* persuasive, it need not determine whether Decedent lacked authority to reassign ownership or change beneficiaries. This is so because, the Estate's facts, accepted as true, show that Decedent failed to substantially comply with FNWL's change of beneficiary procedure.

II. *Substantial Compliance*

The Estate seeks reformation of the Policies to designate the Estate as beneficiary on the grounds that Decedent "substantially complied with the requirements for changing the beneficiary designations" by reassigning the Policies to himself and by paying the premiums for 14 years. FACC ¶¶ 48, 36–43.

At the time of Decedent's death, the Policies designated ASC and ASC GI respectively as the sole beneficiaries. Setting aside the question of whether Decedent lacked authority to reassign the Policies' ownership, Decedent, in fact, filed Absolute Assignment Forms for both policies and ownership was reassigned to him.

But during the 14 years before his death, Decedent did not change or attempt to change the Policies' beneficiaries.

In Oregon, where an insurance company, via interpleader action, deposits funds with a court, a claimant seeking equitable relief need not show that the Decedent "strictly complied with the procedure established by the insurance company[,]" to change the beneficiary. *Principal Life Ins. Co. v. Downing-Sterling*, No. CV 01-1809 HU, 2003 WL 25279366, at *4 (D. Or. Feb. 5, 2003) (citing *N. Life Ins. Co. v. Burkholder*, 131 Or. 537, 550–51 (1930); *Metro. Life Ins. Co. v. Skov*, 51 F. Supp. 470, 477 (D. Or. 1943); *Couch on Insurance* 3d § 60:61, n.44). Instead, courts may apply equitable relief where a claimant shows that the Decedent "substantially complied" with insurance company change of beneficiary procedure. *Edwards v. Wolf*, 278 Or. 255, 262 (1977). In Oregon, substantial compliance requires "at least some attempt made on the part of the insured to change a beneficiary before equitable relief will be applied." *Id.* That is, Oregon's substantial compliance standard requires an *objective* manifestation of the insured's intent in the form of "at least some attempt" to comply with an insurance company's change of beneficiary procedure. Oregon's "at least some attempt" standard is "more lenient" than the "every reasonable effort" rule applied in other states. *Webber v. Olsen*, 157 Or. App. 585, 592 (1999), *rev'd on other grounds*, 330 Or. 189 (2000) (explaining the difference between the Oregon and California rules). But still it is a standard that must be

met. Here, the Estate fails to plausibly allege that Decedent made *any* attempt to comply with FNWL's change of beneficiary procedure.[4]

The Estate first contends that Decedent's execution of the Absolute Assignment forms (transferring the Policies' ownership from ASC to Decedent) shows "some attempt" to comply with FNWL's change of beneficiary procedure. Pl. Resp. at 6. Not so. The Absolute Assignment Form determines only policy ownership. FNWL requires separate written notice to designate or change a beneficiary. The Absolute Assignment Forms, signed by Decedent, provide, in bold italic type, above the signature line: ***"Death benefits will be payable in accordance with the latest beneficiary designation on file with Farmers New World Life Insurance Company."*** Compl., Ex. C, Absolute Assignment Forms, ECF No. 1 at 18, 19.

---

[4] In both *Edwards* and *Burkholder*, the insured also failed to make any attempt to comply with an insurance policy's change of beneficiary procedure. Yet in each case, the court exercised its equitable authority to award proceeds to a claimant who was not the designated beneficiary. However, those cases are distinguishable from this case. In *Edwards*, the parties had *stipulated* that it was the insured's intent to make the claimant his beneficiary. *Edwards*, 178 Or. at 257. The court stated it was only because of the stipulation that it departed from the substantial compliance rule. *Id.* at 262. And in *Burkholder*, the insured died in 1926, eight months after getting engaged. On his death bed, the insured hand wrote his fiancée's name on his insurance policy, "in the space where the name of the beneficiary is usually and generally written," believing "he was actually making over said policy[.]" *Burkholder*, 131 Or. at 542. The court determined that it was decedent's "manifest and plain intention" that his fiancée receive the policy proceeds. *Id.* *Burkholder* must be understood in the context of its time, 1926, when communication was arduous and slow. Further, decedent was on his death bed and had gotten engaged only eight months before. In modern times, such action would not warrant equitable relief.

The Estate next contends that Decedent *intended* to change the Policies' beneficiary but that he failed to do so based on a "mistaken belief" that "the Absolute Assignment Forms transferred to him complete and exclusive ownership and control of the Policies in all respects, including control over the beneficiary designations." FACC ¶ 25. The Estate contends that Decedent would not have paid the premiums for 14 years had he not intended to retain the Policies' death benefits. *Id.* at 29. And Decedent "expressed to his wife . . . on multiple occasions that he intended all his assets, including life insurance policies, to benefit his Estate by way of a pour-over will into his irrevocable trust; to which all of Decedent's remaining assets were transferred." *Id.* ¶ 28. The Estate contends that these expressions of Decedent's intent show "some attempt" to comply with insurance company change of beneficiary procedure. *Id.* ¶ 2. Not so.

The substantial compliance standard requires a specific objective manifestation of the insured's intent—at least some attempt to comply with the change of beneficiary procedure. The "alleged oral assertions of [Decedent's] intent . . . , even if admissible, and even if accepted as true, cannot and do not overcome [the] absence of affirmative action." *Midland Nat'l Life Ins. Co. v. Lacheln*, No. 3:11-CV-00957-JE, 2012 WL 6851533, at *9 (D. Or. Oct. 3, 2012).

Further, as the Court explained in its earlier opinion, the Will and Trust do not help the Estate. Decedent's Will does not refer to any life insurance policy. *See* First Barton Decl. ¶ 6, Ex. 3 (Decedent's Last Will and Testament), ECF No. 22-3. And the Trust lists four other life insurance policies, but it doesn't list the FNWL

Policies either by insurance company name or by policy number or even as "keyman policies." First Barton Decl. ¶ 4, Ex. 1 (Complete Restatement of Decedent's Trust), ECF No. 22-1; *id.*, Schedule B (listing four life insurance policies), ECF 21-1 at 37. But even if the Will or Trust specifically referenced the FNWL policies, that would not constitute "some attempt" to comply with FNWL's change of beneficiary procedure.

In sum, the Estate's facts, accepted as true and viewed in the light most favorable to the Estate, show that Decedent failed to take any action to comply with FNWL's change of beneficiary procedure. Accordingly, there is no basis to reform the Policies.

III. *Other Equitable Relief*

The Estate seeks equitable relief on other grounds. The Estate asks the Court to (1) impose a constructive trust; (2) provide equitable restitution; and (3) invoke equitable estoppel. FACC ¶ 4.

A. *Constructive Trust*

The Estate contends that "[i]f [Defendants] receive the interpleaded proceeds, they will be unjustly enriched at the Estate's direct expense" because "[t]he death benefits exist only because Decedent and his wife personally sustained both Policies for fourteen (14) years at a cost of $169,119.36." FACC ¶ 52. To rectify the alleged unjust enrichment, the Estate asks the Court to impose a constructive trust. *Id.*

"A constructive trust is a form of remedy for unjust enrichment." *Wadsworth v. Talmage*, 365 Or. 558, 564 (2019), *opinion adhered to as modified on*

*reconsideration,* 366 Or. 15 (2019). "[A] constructive trust does not stand on its own as a substantive claim, but exists solely as an equitable *remedy,* available to divest an individual who has been unjustly enriched of property that he or she 'ought not, in equity and good conscience, hold and enjoy.'" *Tupper v. Roan*, 349 Or. 211, 219 (2010) (emphasis in original) (quoting *Marston v. Myers et ux.*, 217 Or. 498, 509 (1959)).

A constructive trust may be an appropriate remedy where there is unjust enrichment and wrongdoing on the part of the property's recipient. *Tupper*, 349 Or. at 219. A constructive trust may be warranted where a defendant acquires property

> through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest.

*Id.* (quoting John Norton Pomeroy, 4 *A Treatise on Equity Jurisprudence* § 1053, 119 (5th ed. 1941)). But "even in the absence of the more active sorts of wrongful behavior" a constructive trust may be warranted where "a person in a fiduciary or confidential relationship acquires or retains property in violation of a duty impressed upon him by that relationship." *Id.* at 220.

Defendants contend that the Estate has not alleged an equitable basis for a constructive trust because "there is no wrongful acquisition[,]" since Defendants are the Policies' named beneficiaries. Def. Mot. at 13. Defendants also contend that the Estate fails to allege facts that impute unjust enrichment to Dr. Archer or Dr. Buzzas (ASC's current member manager), *id.* at 13–14, 15–16; First Buzzas Decl. ¶ 1, ECF

No. 23. Defendants point out that Decedent paid premiums not to Dr. Archer or Dr. Buzzas but to FNWL to maintain the Policies that Decedent had reassigned to himself. *Id.* at 15–16; Second Buzzas Decl. ¶ 1, ECF No. 41. And "[t]he death benefits were not payable to the Estate or to Decedent, but to [Decedent's] chosen beneficiaries." *Id.* at 16. Further, as to the equities, Defendants note that "[Decedent's] retirement caused substantial financial loss of revenue to both ASC and ASC Gl[,]" from which the businesses did not recover. First Buzzas Decl. ¶ 7; Def. Mot. at 15–16. "In 2011 ASC filed a petition for Chapter 7 bankruptcy." *Id.* "[Dr. Buzzas] . . . personally paid over $750,000 to retire obligations of ASC." *Id.*; Def. Mot. at 16.

The Estate contends that "[e]ven a . . . 'mistake' can justify imposition of a constructive trust." Estate Resp. at 23 (citing *Tupper*, 349 Or. at 220). However, unless the acquisition or retention of property is *also* wrongful, there is no basis for the imposition of constructive trust. *See Tupper*, 349 Or. at 220 ("[W]e suggested that even a 'mistake' might result in unjust enrichment justifying imposition of a constructive trust. . . . [H]owever, *the common thread* is the acquisition or retention of property in a way that is in some sense wrongful[.]"). *Id.* (emphasis added).

Here, the Estate does not allege, nor could it, that Defendants acted wrongfully to acquire beneficiary status. And, the Estate's facts, accepted as true, do not support that Defendants are unjustly enriched. Accordingly, there is no basis to impose a constructive trust.

B. *Restitution*

The Estate seeks "equitable restitution" because "Decedent and [his wife] conferred a direct and quantifiable benefit on [Defendants]: the preservation and continuity of Policies" without which, the "Policies would have lapsed and [Defendants] would have no proceeds to claim." FACC ¶ 56.

In Oregon, a court may provide a restitution remedy where one party has unjustly enriched itself at the expense of another. However, "the question of when enrichment is unjust does not turn on whether one has been unjustly enriched in some abstract sense of moral judgment." *McAllister Constr. Co. v. Liu*, 343 Or. App. 53, 61 (2025) (quoting *Larisa's Home Care, LLC*, 362 Or. 115, 126 (2017)). Instead, the "question is whether defendant was 'unjustly enriched by legal standards.'" *Id.* at 61–62 (quoting *Larisa's Home Care*, LLC, 362 Or. at 127). That is, "[t]o be the subject of a claim in restitution, the benefit conferred must be something in which the claimant has a legally protected interest[.]" *Id.* at 63 (quoting *Restatement* § 2 comment b). "[T]he question of unjust enrichment is a legal one, and courts should not base a decision on an 'abstract sense of moral judgment.'" *McAllister Constr. Co.*, 343 Or. at 59 (quoting *Larisa's Home Care*, 362 Or. at 126).

Here, Defendants, not the Estate, are the Policies' designated beneficiaries. The Estate has no legally protected interest in the Policies' proceeds. And the Estate does not, nor could it, allege that Defendants acquired beneficiary status by fraud or other wrongful conduct.

Further, the Oregon Supreme Court has explained that, in considering restitution on the basis of unjust enrichment, "courts should examine the established legal categories of unjust enrichment as reflected in Oregon case law and other authorities to determine whether any particular enrichment is unjust." *Larisa's Home Care, LLC*, 362 Or. at 132. The Estate cites no case law that supports the award of life insurance proceeds as restitution to a claimant who has paid part of the premium, even most of the premium, instead of to the named beneficiary.

Here, the Estate's facts, accepted as true, show that the Estate does not have a legal interest in the proceeds and that Defendants are not unjustly enriched. Accordingly, restitution is not warranted.

C. *Equitable Estoppel*

The Estate seeks to equitably estop Defendants from receiving the Policies' proceeds. FACC ¶¶ 61–67.

In Oregon, "[e]quitable estoppel has been defined as the doctrine by which a person may be precluded by his act or conduct, or silence when it is his duty to speak, from asserting a right which he otherwise would have had." *Irvin Petersen Trucking, LLC v. Scala*, 342 Or. App. 221, 226 (2025) (citation omitted). For the doctrine to apply, "(1) there must be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it." *Id.* Further, "there must be justifiable reliance by the party seeking to invoke estoppel, and that reliance must

be reasonable." *Brockway v. Allstate Prop. & Cas. Ins. Co.*, 284 Or. App. 83, 90 (2017) (internal citation and quotation marks omitted).

Here, the Estate seeks to use the doctrine of equitable estoppel as a sword or cause of action, not as a shield or affirmative defense. Other jurisdictions have restricted the doctrine's use to that of an affirmative defense. *See, e.g.*, *Sloma v. Washington State Dep't of Ret. Sys.*, 12 Wash. App. 2d 602, 621 (2020) ("[E]quitable estoppel is not available for use as a 'sword,' or cause of action by plaintiffs. . . . [It] is properly used as a 'shield,' or a defense."). The Court could find no clear statement of Oregon law on this question and accordingly considers the Estate's cause of action.

The Estate contends that Decedent relied to his detriment (1) on Defendants' silence as to the Policies' beneficiary status, FACC ¶¶ 63, 64; Pl. Resp. at 27–28; and (2) on Defendants' affirmative conduct of relinquishment, such as "ceas[ing] all premium payments at the very moment Decedent assumed them[,]" Pl. Resp. at 27–28. The Estate contends that had Decedent not relied on Defendants' silence or conduct of relinquishment, he "could have submitted a beneficiary-change form, sought legal advice, or declined to fund the Policies." *Id.* at 28.

Even if the prior personal knowledge and state of mind of a deceased individual could plausibly be alleged, the estoppel claim fails. First, the Estate does not, nor could it, allege that Defendants had a duty to inform Decedent of the Policies' beneficiary status or FNWL's change of beneficiary procedure. Further, the Estate does not, nor could it, allege that Defendants intended that Decedent rely on their silence or alleged conduct of relinquishment. Finally, Decedent had fourteen years

to investigate the terms, including the beneficiary terms, of the Policies that he reassigned to himself. For that reason, any reliance on Defendants' silence or conduct of relinquishment was neither reasonable nor justifiable.

The Estate's facts, accepted as true and viewed in the light most favorable to the Estate, fail to state an equitable estoppel claim.

IV. *Rule 11 Motion*

Defendants move the Court to impose Rule 11 sanctions on the Estate for "continu[ing] to prosecute . . . clearly meritless claims for purposes unrelated to vindicating its personal rights," and causing Defendants "to litigate unnecessary issues and incur substantial expenses." Def. Rule 11 Mot. at 2, ECF No. 46. Defendants contend that the Estate's claims are both frivolous and asserted with improper purpose. *Id.* at 8, 13. Defendants seek attorneys' fees for ASC. Defendants also filed a separate motion seeking attorneys' fees for ASC-GI. ECF No. 42.

Under Federal Rule of Civil Procedure 11, a court may impose sanctions on an attorney who raises objectively frivolous claims or legal contentions; makes factual contentions without evidentiary support; fails to conduct a reasonable pre-suit investigation; or brings suit for an improper purpose. Fed. R. Civ. P. 11(b), (c). Though frivolousness and improper purpose inquiries are distinct, they overlap. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362, 1365 (9th Cir. 1990). To sustain a sanction, either ground is sufficient. *Id.* Courts use "an objective

standard of reasonableness and do not consider the attorney's subjective good faith." *Lake v. Gates*, 130 F.4th 1064, 1068 (9th Cir. 2025).

Frivolous claims are "claims . . . [not] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). To determine whether a claim is frivolous, a court must "conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) [whether] the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005). "[F]rivolous . . . denote[s] a filing that is *both* baseless *and* made without a reasonable and competent inquiry." *Id.* (quoting *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996) (emphasis in *Keegan*)). An action is "not 'warranted by law' where no 'plausible, good faith argument can be made by a competent attorney' in support of the proposition asserted." *Paciulan v. George*, 38 F. Supp. 2d 1128, 1144 (N.D. Cal. 1999).

Suits brought for improper purpose include suits to "harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1).

Defendants contend that the Estate's repleaded claims are frivolous because (1) "the Estate reasserts claims previously dismissed by this Court without citing any newly discovered, admissible evidence or intervening change in law to justify repleading[;]" and (2) the Estate failed to undertake a "reasonable investigation" that

would have revealed the claims' legal insufficiency. Def. Rule 11 Mot. at 8. Defendants also contend that the Estate acted with improper purpose because it "made a conscious/willful decision to advance [the] frivolous claim[s]" in "disregard" of the "authority that precludes the Estate's claims [that] was made readily available to both it and its counsel." *Id.* at 15. Further, Defendants note that the FACC improperly "claim[ed] that the unsigned, unfinished Independent Contractor Agreement gave Decedent the right to purchase the policies a year after leaving the practice, while intentionally concealing from the Court that there was no final, enforceable agreement, merely an unsigned draft." Def. Rule 11 Reply at 6.

Defendants seek "an order directing the Estate and its counsel to refrain from repleading dismissed claims absent newly discovered evidence or a substantiated, non-frivolous change-in-law theory[,]" Def. Rule 11 Mot. at 17–18; a "warning that further violations may result in additional monetary or non-monetary sanctions[,]" *id.*; and "reasonable attorney's fees and costs incurred as a result of the Estate's FRCP 11 violations, including fees and costs for preparing and litigating this motion[,]" *id.* at 17.

The Estate responds that "making an unsuccessful legal argument is not the same as making a sanctionable one." Estate Resp. to Rule 11 Mot. at 4, ECF No. 48. The Estate contends that "Oregon courts have, for nearly a century, recognized that equitable relief is available to give effect to an insured's intent regarding life-insurance beneficiaries even where formal policy procedures were not strictly followed." *Id.* at 6. The Estate maintains that Oregon's substantial compliance

standard is a "flexible, fact-driven equitable doctrine[,]" *id.* at 7, and "unsettled" law, *id.* at 16, and that the facts here are unique and distinguishable from the case law, *id.* at 8. The Estate argues that "[the] law is constantly evolving, and effective representation sometimes compels attorneys to take the lead in that evolution." *Id.* at 4 (quoting *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988)). In sum, counsel for the Estate maintains that sanctions are not warranted because counsel vigorously advocated for the client and engaged in "good-faith disputes over unsettled factual and equitable." *Id.* at 16.

The Court has reviewed Defendants' Rule 11 Motion and related filings. The Court finds that the Estate's FACC reasserts the same claims—claims that the Court had already dismissed as insufficient—without new law and with few, if any, *relevant* new facts. The Court also finds that counsel for the Estate made a representation to the Court that counsel knew—from conferral with Defendants—lacked factual basis. Given the scarce and arguably evolving case law on substantial compliance in interpleader actions in Oregon, the Court attributes counsel's conduct, for the most part, to vigorous advocacy. The Court finds other aspects of the Estate's conduct troubling, but short of sanctionable. "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs*, 859 F.2d at 1345. Accordingly, Defendants' Rule 11 Motion is denied. In addition to the Rule 11 Motion seeking award of attorneys' fees to ASC, Defendants filed a separate motion seeking the award of attorneys' fees to ASC-GI. That motion is also denied.

To be awarded the interpleader funds, Defendants must file a separate motion to claim the funds and seek an order to disburse those funds.

## CONCLUSION

For the reasons explained above, the Court GRANTS Defendants' Motion to Dismiss, ECF No. 39. Accordingly, the First Amended Cross Complaint, ECF No. 38, is DISMISSED with prejudice and without leave to amend. Defendants' Motion for Rule 11 Sanctions including attorneys' fees, ECF No. 46, is DENIED. Defendants' Motion for attorneys' fees, ECF No. 42, is DENIED. Judgment shall be entered accordingly.

It is so ORDERED and DATED this 9th day of November 2026.

/s/Ann Aiken
ANN AIKEN
United States District Judge